# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| TIMOTHY HUMPHREY, | : | |
| Petitioner, | : | |
| | | Case No. 3:05CV0373 |
| vs. | : | |
| | | District Judge Walter Herbert Rice |
| WARDEN WANZA JACKSON, | : | Magistrate Judge Sharon L. Ovington |
| Respondent. | : | |

## REPORT AND RECOMMENDATIONS[1]

### I.    INTRODUCTION

In January 2002, at the conclusion of Humphrey's trial in the Clark County, Ohio Court of Common Pleas, a jury found him guilty on all charges – namely, one count of engaging in a pattern of corrupt activity in violation of Ohio Rev. Code §2923.32; three counts of trafficking in drugs in violation of Ohio Rev. Code §2925.03; and one count of possession of cocaine in violation of Ohio Rev. Code §2925.11.

Humphrey is currently incarcerated in the Warren Correctional Institution in Lebanon, Ohio.

Having unsuccessfully challenged his convictions in the Ohio courts, Humphrey brings the present case seeking a writ of habeas corpus under 28 U.S.C. §2254. The case

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

is before the Court on Humphrey's Petition (Doc. #1), Respondent's Answer (Doc. #7), Humphrey's Supplemental Memorandum in Support of Seventh Ground for Relief (Doc. #19), Respondent's Supplemental Response to Petitioner's Seventh Ground for Relief (Doc. #22), Humphrey's Amended Exhibit #10 (Doc. #24), and the record as a whole.

## II. FACTUAL BACKGROUND

Referring to Humphrey as "Timothy" and to his cousin and co-defendant Rufus Humphrey as "Rufus," the Ohio Court of Appeals described the factual basis of Humphrey's convictions as follows:

> The State produced evidence at trial demonstrating that Timothy was a drug dealer who had distributed large quantities of cocaine in Springfield, Ohio. Rufus was one of the people with whom Timothy had worked closely in distributing drugs. The Springfield Police Department began investigating Timothy and Rufus on or about May 21, 2000. Alex Williams, a confidential informant, was used to make controlled cocaine buys from both Timothy and Rufus, and he recorded several phone conversations between himself and the two suspects.
>
> During the police investigation, both Timothy and Rufus engaged in several specific incidents of drug-related activity, working together to sell and distribute cocaine. One specific incident occurred on May 21, in Rufus's barber shop. Present at the shop were Williams, Timothy, Rufus, Leonard Dixon, and Rodney White. At that time Timothy had in his possession a gym bag containing three or four kilos of cocaine, along with two or three pounds of marijuana. With Rufus present, Timothy sold Leonard one kilo of cocaine for $26,000. Timothy also sold cocaine to White, offered to sell Williams a quarter kilo for nine thousand dollars, and gave a quantity of cocaine to Rufus.
>
> On May 23, 2000, Williams and Timothy had a phone conversation during which Williams arranged to purchase a quantity of cocaine. On the following day, Williams and Timothy had another phone conversation during which Timothy told Williams that he was going to be out of town and that Rufus would make the sale for him. A few minutes later Rufus

2

paged Williams. When Williams returned Rufus's call, Rufus told Williams that Timothy had spoken with him about selling some cocaine to Williams and had given him four ounces to sell. Timothy had informed Williams that the transaction would occur at Rufus's home ... and that the price would be $1,200.

Williams proceeded to Rufus's home where he made a controlled buy of one ounce of cocaine from Rufus for $1,200. At that time, Williams observed four ounces of cocaine in Rufus's possession.

On May 30, 2000, Timothy met Williams at BW-3's Restaurant where Williams made a controlled buy of three-fourths of an ounce of cocaine for $800. This transaction was videotaped. On that occasion, Williams had attempted to purchase five ounces, but Timothy had not had that quantity available.

On June 11, 2000, Williams and Timothy had a phone conversation wherein Timothy indicated that his shipment of cocaine had arrived. Williams stated that he wanted to purchase five ounces. Timothy told Williams to contact Rufus to make his purchase, but Williams said he would only deal with Timothy. The following date, on June 12, 2000, Williams and Timothy had several phone conversations arranging the sale of five ounces of cocaine to Williams. During one of those conversations, Timothy informed Williams that he had delivered one-half kilo to Rufus earlier that morning and that he was waiting for Rufus to bring five ounces back to him so that he could make the sale to Williams. Later that day, Williams proceeded to Timothy's house..., where he made a controlled purchase of five ounces of cocaine from Timothy for $5,200. This transaction occurred in the backyard and was videotaped.

On June 13, 2000, Williams and Timothy had a phone conversation wherein Timothy stated that his shipment had arrived and he would be selling it in one-half kilo units for $17,000 each. The following day, Williams went to Timothy's home where he observed three of four kilos of cocaine in Timothy's possession. Subsequently, on June 26, 2000, Timothy called Williams and stated that another shipment had arrived and he had fifty ounces to sell.

(Doc. #7, Exhibit 4 at 3-5). After the jury found Humphrey guilty on all charged counts,

the trial court sentenced him to consecutive sentences totaling twenty-six years (eighteen

3

years mandatory).

## III. PROCEDURAL BACKGROUND

### A. Humphrey's State-Court Litigation

Humphrey, represented by new counsel, filed a timely direct appeal raising four assignments of error:

1. The Trial Court Erred in Failing to Discharge Tim Humphrey Pursuant to Ohio's Speedy Trial Statute R.C. 2945.71.

2. The Evidence Presented at Trial Was Insufficient As A Matter of Law to Support a Conviction Against Tim Humphrey for Violation of R.C. 2923.32(a)(1) 'A Pattern of Corrupt Activity.'

3. The Trial Court Erred By Failing To Impanel A Proper Jury And Denying Counsels' Challenge To The Jury Venire.

4. The Trial Court Erred By Failing To Grant The Motion to Sever.

(Doc. #7, Exh. 2 at 4).

On June 27, 2003, the Ohio Court of Appeals rejected Humphrey's assignments of error and affirmed his convictions. *Id.*, Exh. 4.

Humphrey then had forty-five days to file a direct appeal in the Ohio Supreme Court, *see* Rules of Practice of the Ohio S.Ct., Rule II, §2(A), but he did not do so apparently because his appellate counsel had not forwarded a copy of the Ohio Court of Appeals' decision "in a timely manner." (Doc. #7, Exh. 5 at 2). Knowing he missed his deadline in the Ohio Supreme Court, Humphrey filed a Motion for Delayed Appeal on September 11, 2003. *Id.*, Exh. 5 at 1-2. The Ohio Supreme Court granted Humphrey's

Motion and ordered him to file a memorandum in support of jurisdiction within thirty days (by December 5, 2003). *Id*., Exh. 6. Humphrey did not file a timely Memorandum in Support of Jurisdiction, and consequently, on December 11, 2003, the Ohio Supreme Court dismissed his delayed direct appeal for failure to prosecute. *Id*., Exh. 7.

Meanwhile, and previously, Humphrey had taken additional action in the Ohio Court of Appeals. On September 24, 2003 he filed a Motion seeking a ninety-day extension to file a Petition to Reopen Direct Appeal under Ohio R. App. P. 26(B).[2] (Doc. #7, Exh. 8). The Ohio Court of Appeals apparently granted this Motion because on December 22, 2003, Humphrey filed a Motion to File Application for Reopening (Doc. #7, Exh. 9), which the Ohio Court of Appeals rejected on the merits. (Doc. #7, Exh. 10).

Humphrey then had forty-five days to seek further review in the Ohio Supreme Court. *See* Rule II, §§1-2, Rules of Practice of Ohio Supreme Court. But he did not do so. Instead, he waited until September 2004 to file a Motion for Delayed Appeal in the Ohio Supreme Court. (Doc. #7, Exh. 11). Humphrey sought to raise all issues he had raised in his Rule 26(B) Application. *Id*. In October 2004 the Ohio Supreme Court denied Humphrey's Motion for Delayed Appeal (Doc. #7, Exh. 11), effectively ending Humphrey's challenges to his convictions in the Ohio courts.

---

[2] Under Ohio law, a criminal defendant wanting to raise a claim of ineffective assistance of appellate counsel claim must file an Application for Reopening under Ohio R. App. P. 26(B) in the Court of Appeals where the ineffective assistance allegedly occurred. *See Fautenberry v. Mitchell*, 515 F.3d 614, 639-40 (6th Cir. 2008) (citing *State v. Murnahan,* 63 Ohio St.3d 60, 584 N.E.2d 1204, 1209 (1992)). Rule 26(B) requires such Motions to be filed "within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time." *Fautenberry*, 515 F.3d at 640 (quoting Rule 26(B)(1)).

5

### B. Federal Habeas Corpus

Humphrey's present Petition for Writ of Habeas Corpus raises eight Grounds for Relief:

**Ground One:**

The indictment against the defendant Tim Humphrey was faulty rendering the Defendant's conviction void or voidable; and

> Supporting Facts: The original indictment against Petitioner improperly alleged fifteen (15) predicate acts as well as ten (10) duplicated identical specific alleged charges resulting in ten duplicated charges, therefore, improperly setting forth the elements of the alleged charges against the Petitioner.
>
> These duplicated charges and predicate acts constituted a fatal error in the indictment as well as structural error in the trial court process; and

**Ground Two**:

The trial court erred in failing to discharge Tim Humphrey for failure to afford him a speedy trial due to official bad faith in violation of the [S]ixth [A]mendment of the Constitution of the United States and Article I, Section 10 of the Ohio Constitution; and

> Supporting Facts: The State prosecution intentionally withheld discovery from the Petitioner in bad faith demanding an answer to a plea bargain.
>
> Because the Petitioner did not have the discovery (which was being held hostage to the plea bargain offer), the Petitioner had to request a continuance of his trial and specifically set forth that the continuance could not have been tolled against him towards a speedy trial.
>
> The Petitioner was not brought to trial within 90 days, instead, 148 days elapsed before the Petitioner was brought to trial divesting the trial court of jurisdiction to proceed; and

**Ground Three**:

Defendant Tim Humphrey was denied a fair trial due to ineffective assistance of

counsel in violation of the [S]ixth [A]mendment to the U.S. Constitution; and

> <u>Supporting Facts</u>: The Petitioner's trial counsel was ineffective because he 1) failed to argue that the indictment was faulty, 2) f[a]iled to challenge the admissibility of evidence prior to trial, 3) failed to properly suppress evidence prior to trial, 4) failed to call witnesses and present exculpatory evidence at trial, and 5) failed to submit a Notice of Alibi; and

**Ground Four:**

The court erred by allowing inadmissable evidence into evidence to the prejudice of Tim Humphrey in violation of Due Process; and

> <u>Supporting Facts</u>: During the Petitioner's trial, the State Prosecution introduced numerous audio recordings of alleged surveillance tapes without any proper authentication to establish that the Petitioner was a participant in the tapes.
>
> The State further introduced numerous taped three way telephone conversations without any authentication. The record clearly shows, that in no way, did the state provide evidence which would have connected the Petitioner as a speaker or participant in any of the numerous surveillance or telephone tapes which were introduced during the Petitioner's trial; and

**Ground Five:**

The evidence presented at trial was insufficient to support a jury verdict and was against the weight of evidence as to all charges against the Defendant Tim Humphrey in violation of Due Process.; and

> <u>Supporting Facts</u>: The State prosecution failed to establish the required element of an 'enterprise' in the charge of Engaging in a Pattern of Corrupt Activity; and

**Ground Six:**

The trial court erred in failing to properly sever the case into two separate trials subjecting Defendant Tim Humphrey to prejudicial joinder in violation of Due Process; and

> <u>Supporting Facts</u>: Numerous Court statements during the trial indicate a

7

severance should have been granted.

The Petitioner was forced to take the stand creating an atmosphere of combatants between the Petitioner and his co-defendant. The record will clearly show that joinder was a convenience and was prejudicially joindered in order to strengthened the state's weak case; and

**Ground Seven:**

The trial court improperly sentenced the Defendant, Tim Humphrey, to 26 years of incarceration contrary to law; and

Supporting Facts: The Petitioner was sentenced to consecutive charges of the original indictment which were allied crimes of similar import.

The sentencing court failed to state facts, supported by the record, to substantiate consecutive sentencing or the harshness of applicable sentencing ranges.

The judge, not the jury, found facts which increased the Petitioner's sentence which was a Sixth Amendment violation.

The Petitioner was sentenced to 26 years in prison contrary to law; and

**Ground Eight:**

The Petitioner claims that he is 'actually innocent' of all charges for which he was convicted of; and

Supporting Facts: The Petitioner has witnesses which will prove that he was not present at the place and times the alleged crimes were supposed to have occurred. This exculpatory evidence was ignored by the Petitioner's trial counsel and the Second District Court of Appeals....

(Doc. #1 at 5-9). Humphrey seeks an evidentiary hearing, a declaration that his convictions are invalid and void, and a writ of habeas corpus directing his release from his "Unlawful State Custody." (Doc. #1 at 9).

Two additional procedural matters warrant discussion. First, Humphrey

previously sought (Doc. #9), and was granted (Doc. #15), leave to expand to record to include "[t]hree affidavits establishing Petitioner's whereabouts at the time [he] was alleged to have committed the crimes for which he was convicted of...." *Id*. at 1. Although Humphrey was given additional time to file copies of those affidavits, he did not file any such affidavits.

Second, upon Humphrey's Motion, the Court previously stayed his Seventh Ground for Relief pending the resolution of *Burton v. Waddington*, 142 Fed. Appx. 297 (9th Cir., July 28, 2005), *cert. granted*, __ U.S. ___, 126 S.Ct. 2352 (2006). (Doc. #17). Once the Supreme Court issued its decision in *Burton*, the stay was vacated and the parties were given additional time to further brief their contentions regarding Humphrey's Seventh Ground for Relief. (Doc. #18).

Humphrey presently argues that an Order staying and abeying this case is warranted to enable him to pursue in the Ohio courts his unexhausted Seventh Ground for Relief. As will be discussed below, Humphrey has no remaining avenue of relief to raise this claim in the Ohio courts, and consequently, issuance of a stay-and-abey Order is unwarranted. *See Deitz v. Money*, 391 F.3d 804, 811-12 (6th Cir. 2004) (noting, "Section 2254(b)(1)(B)(i) excuses exhaustion when 'there is an absence of available state corrective process.'").

IV. **ANALYSIS**

Respondent contends that Humphrey has waived federal habeas review of each of

9

his Grounds for Relief due to his various procedural defaults in the Ohio courts.

## A. Exhaustion, Procedural Default, and Waiver

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies..., thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)(internal citations and punctuation omitted). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court..., alerting that court to the federal nature of the claim." *Reese*, 541 U.S. at 29 (citations omitted); *see Williams v. Bagley*, 380 F.3d 932, 967 (6th Cir. 2004) ("'[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.'")(quoting *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999)).

If a federal habeas petitioner fails to fairly present federal claims to the state courts and if a state procedural rule bars the petitioner from obtaining a state court merits review of his federal claims, then the petitioner's procedural default may result in a waiver of the claims for purposes of federal habeas review. *See Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004); *see also Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001).

In Ohio, one way a criminal defendant might procedurally default is by omitting claims on direct appeal that appear on the face of the trial record. *Bagley*, 380 F.3d at 967. This constitutes a procedural default under Ohio's doctrine of *res judicata*. *Id*. As applied by the Ohio courts, "*res judicata* is an adequate and independent state ground for

10

barring habeas review of constitutional claims."[3] *Id*.

Another possible procedural default in Ohio occurs when a criminal defendant fails to perfect an appeal from the Ohio Court of Appeals to the Ohio Supreme Court. To perfect such an appeal, a criminal defendant must file a Notice of Appeal in the Ohio Supreme Court within forty-five days of the entry of Judgment being appealed. Rule II, §2(a)(1)(A), Rules of Practice of the Ohio Supreme Court; *see Smith v. State of Ohio Dept. of Rehab. and Corrections*, 463 F.3d 426, 431-32 (6th Cir. 2006); *see also Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004).

A third possible example of a procedural default in Ohio occurs if – after the Ohio Court of Appeals renders its decision on direct appeal – the criminal defendant fails to file an Application to Reopen Appeal under Ohio R. 26(B) within ninety days of the Court of Appeals' decision on direct appeal. *See Parker v. Bagley*, __ F.3d __, __, 2008 WL 4443802 at *2-*3 (6th Cir. Oct. 3, 2008) (and cases cited therein).

Two limited situations excuse a procedural default: (1) if the petitioner shows

---

[3] A four-part test applies to resolving whether a misstep in state court constitutes a procedural default:

(1) the court must determine that there is a state procedural rule with which the petitioner failed to comply; (2) the court must determine whether the state courts actually enforced the state procedural sanction; (3) the state procedural rule must have been an adequate and independent state procedural ground upon which the state could rely to foreclose review of a federal constitutional claim; and (4) if the court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for his failure to follow the rule and that actual prejudice resulted from the alleged constitutional error.

*Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002) (citing *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir.1986) (other citations omitted)).

cause and prejudice or (2) if the petitioner shows a fundamental miscarriage of justice will result from the failure to consider the merits of the claims. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Monzo v. Edwards*, 281 F.3d 568, 575 (6th Cir. 2002).

**B.** **Analysis**

Assuming that Humphrey fairly presented his federal constitutional claims in the Ohio Court of Appeals during his direct appeal or in his Rule 26(B) Application to Reopen Appeal, Humphrey committed two procedural missteps in the Ohio Supreme Court – one on direct appeal, the other in his Application to Reopen Appeal under Ohio R. App. P. 26(B) proceedings.

**Direct Appeal**. After the Ohio Court of Appeals issued its June 27, 2003 decision on Humphrey's direct appeal, *see* Doc. #7, Exh. 4, he failed to perfect a timely direct appeal because he did not file a Notice of Appeal in the Ohio Supreme Court within forty-five days of the judgment being appealed. *See* Rule II, §2(A)(1)(a), Rules of Practice of the Ohio Supreme Court; *see also Smith*, 463 F.3d at 431-32; *Bonilla*, 370 F.3d at 497. Although the Ohio Supreme Court later granted Humphrey's Motion to file a Delayed Direct Appeal, the Ohio Supreme Court set a deadline (giving him thirty days) to file his Memorandum in Support of Jurisdiction. (Doc. #7, Exh. 6). Yet Humphrey failed to file a timely Memorandum in Support of Jurisdiction, and the Ohio Supreme Court dismissed his delayed appeal. *See* Doc. #7, Exhs 6, 7. Consequently, by not perfecting a timely direct appeal in the Ohio Supreme Court, Humphrey committed a procedural default

12

regarding those claims he raised or should have raised on direct appeal. *See Smith*, 463 F.3d at 431-32; *see also Bonilla*, 370 F.3d at 497.

**Ohio R. App. P. 26(B)**. After the Ohio Court of Appeals rejected Humphrey's Application to Reopen and entered its Judgment, *see* Doc. #7, Exh. 10, he once again had forty-five days to file a Notice of Appeal in the Ohio Supreme Court. *See* Rule II, §2(a)(1)(A). Yet he did not do so, waiting instead for seven months to file a Motion for Delayed Appeal. (Doc. #7, Exhs. 10, 11). Interestingly, although Humphrey explained the procedural history of his Motion, he did not provide a reason for not filing a timely Notice of Appeal. *See* Doc. #7, Exh. 11 at 1-2. The Ohio Supreme Court denied Humphrey's Motion for Delayed Appeal. (Doc. #7, Exh. 12).

By not perfecting a timely appeal in the Ohio Supreme Court of the decision by the Ohio Court of Appeals to deny his Rule 26(B) Application, Humphrey committed a procedural default.

Because Humphrey committed the above procedural defaults and has thus failed to present any of his claims to the Ohio Supreme Court, his federal constitutional claims are waived for purposes of federal habeas review unless (1) he shows cause and prejudice for his procedural defaults or (2) a fundamental miscarriage of justice will result from the failure to consider the merits of the claims. *See Coleman*, 501 U.S. at 750; *see also Murray*, 477 U.S. at 485; *Monzo*, 281 F.3d 575. Humphrey presents no specific argument concerning cause or prejudice. *See* Doc. #1, 19. One possible cause emerges in his claim of ineffective assistance of appellate counsel. But, because Humphrey committed a

procedural default with regard to this claim itself – by not properly presenting it to the Ohio Supreme Court – it cannot serve as cause for his procedure defaults. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *see Scuba*, 527 F.3d at 487-88.

The record of this case, moreover, does not contain any new evidence tending to show that a miscarriage of justice occurred during the state court proceedings. Humphrey was given leave to file certain alibi affidavits, but he did not file any such affidavits. The record also lacks any evidence challenging the correctness of the Ohio Court of Appeals' factual review, *see supra*, §II, without which those findings must be presumed correct under 28 U.S.C. §2254(e)(1).

Lastly, Humphrey seeks an Order staying and abeying this case to permit his to return to the Ohio courts to exhaust his claim that his sentence violates his rights under the Sixth Amendment, as set forth in *State v. Foster,* 109 Ohio St.3d 1 (2006), *Blakely v. Washington*, 542 U.S. 296 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000). (Doc. #19). Such a procedure is unwarranted because those cases do not apply retroactively to cases on collateral review (the trial court entered Humphrey's conviction on March 7, 2002). (Doc. #7, Exh. 1). *See Barber v. Brunsman*, 2008 WL 2791893 at *3-*4 (S.D. Ohio, July 16, 2008)(Rice, D.J.); *see also Valentine v. United States*, 488 F.3d 325, 329-30 (6th Cir. 2007)(and cases cited therein); *Michael v. Crosby*, 430 F.3d 1310, 1312 n.2 (11th Cir. 2005); *Schardt v. Payne*, 414 F.3d 1025, 1036 (9th Cir. 2005).

Accordingly, Humphrey's Grounds for Relief are waived for purposes of federal habeas review.

14

## V. CERTIFICATE OF APPEALABILITY

Before Humphrey may appeal a denial of his habeas petition, he must first obtain a certificate of appealability. 28 U.S.C. §2253(c)(1)(A).

To obtain a certificate of appealability, a habeas petitioner must make a substantial showing of the denial of a constitutional right. *Id.*; *see Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). If a habeas petition is rejected on procedural grounds without reaching the merits of the petitioner's claims, the petitioner obtains a certificate of appealability by demonstrating that reasonable jurists would find it debatable whether (1) the petitioner has stated a valid constitutional claim and (2) the District Court was correct in its procedural ruling. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons stated throughout this Report, reasonable jurists could not debate that Humphrey has waived his claims for purposes of federal habeas review due to his procedural defaults in the Ohio courts. Consequently, a certificate of appealability should not issue.

### IT IS THEREFORE RECOMMENDED THAT:

1. Timothy's Humphrey's Petition for Writ of Habeas Corpus (Doc. #1) be DENIED;

2. A certificate of appealability under 28 U.S.C. §2253(c) not issue; and

3. The case be terminated on the docket of this Court.


October 27, 2008

                                                    s/ Sharon L. Ovington
                                                     Sharon L. Ovington
                                                     United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).